TODD (HOWELL v.)    See Case No. 6,783.

## Case No. 14,074a.

### TODD et al. v. The JAMES ADGER.

[22 Betts, D. C. MS. 115.]

District Court, S. D. New York. 1855.[1]

COLLISION — RATE OF SPEED AT NIGHT — ENGLISH RULE AS TO LOOKOUT — CHANGING COURSE IN UNCERTAINTY — CARRYING LIGHTS BY SAILING VESSEL.

[1. Collision occurs at sea between steamer and schooner; steamer carrying accustomed lights, and moving at rate of 9½ knots; schooner going at rate of 2½ or 3 knots, and displaying no standing lights, but raised a lantern as a signal when the steamer was observed nearing her, but far enough away to enable steamer to avoid her had it been seen. The schooner was not seen by the steamer until it was too late. Held, that the collision was the fault of the steamer; that when moving at night a steamer should keep a proper lookout, and reduce its speed.]

[2. A vessel should not change its course in uncertainty when in danger of collision.]

[3. A schooner is not bound by maritime law to carry lights while under way.]

[This was a libel by William J. Todd and others against the steamboat James Adger to recover damages for a collision.]

BETTS, District Judge. Collision between the schooner Trader and the steamboat James Adger off Barnegat, on the high seas, at one o'clock a. m.; the schooner coming from the south towards New York and the steamer on her voyage from New York to Charleston. The schooner was running on a light breeze from N. E. by E., and was heading about S. S. E.; the steamer running by steam only, without sails, but with the wind abeam. The steamer's starboard side struck schooner's larboard bow. The schooner was abandoned by the crew, and was lost. The steamer carried the accustomed lights, one on each paddle box and one aloft, and had two competent lookouts stationed forward. The schooner was not seen from her until directly on the collision, and when no time remained to avoid her. The schooner carried no standing lights, but raised a lantern as a signal when the steamer was observed nearing her, but far enough off to enable the steamer to avoid her, had it been discerned. The steamer was running nine and a half knots. The wind was light, and schooner had little more than steerage way on her going 2½ or 3 knots. A vessel with sails at the time might be seen a sufficient distance from the steamer to enable the latter to keep away from her. The steamer, on discover-

ing the schooner, starboarded her helm, and within a minute and a half, as estimated, struck her starboard bow on the larboard side of the schooner. She did not know the course of the schooner. If she had ported her helm, it would have carried her under the stern of the schooner. Schooner also ported her helm at same time, but vessel did not feel it. The schooner was not bound by the maritime law to carry lights whilst under way. Jones v. The Hanover [Case No. 7,466]; The Delaware v. The Osprey [Id. 3,763]; The Iron Duke, 2 W. Rob. Adm. 385. She did all that was incumbent on her in exhibiting and waving a light as a warning to the steamer. Jones v. The Hanover [supra]. By the English rule it was the duty of the steamer, if the darkness was so thick as to disable her from discovering vessels ahead, to reduce her speed to a slow rate, and call on deck the disposable part of her crew, to aid in keeping watch. The Europa, 2 Eng. Law & Eq. 562. This, until recently, has been regarded to be substantially the law in United States courts. The Bay State [Case No. 1,148]; Fish v. The Black Warrior [Id. 4,813]. Particularly when the steamer was in a thoroughfare of other vessels. A decision of the United States supreme court would seem to hold a steamer, when she has the usual lookout properly stationed in the night time, excused from liability for a collision happening because the lookout did not discover a sailing vessel ahead upon which she runs. The Columbus, 17 How. [58 U. S.] 181. This decision, if correctly understood, restrains and qualifies the rule of responsibility of the ship for lack of diligence or failure of a lookout to discern and give warning of vessels on the track of steamers. But keeping within the broadest latitude of that decision, the steamer was culpable in this case in particular after receiving notice of the schooner being ahead. First, that the lookout did not notify the officer on deck of the course the schooner was running; second, that the steamer did not stop headway and back her engine; third, that she starboarded her helm, when in case of doubt and uncertainty it was her duty so to do. This duty is fastened upon her by the decision in the case of The Columbus. 17 How. [58 U. S.] 181. The court hold it clearly her duty to stop the engine and back from the danger, and particularly not change her course in uncertainty. So is the English law. The Perth, 3 Hagg. Adm. 414; The Rose, 2 W. Rob. Adm. 1; The James Watt, 2 W. Rob. Adm. 270. If she did not know the position and course of the vessel ahead, or made any variation of her own course, she was bound to port her helm. The Neptune, 10 How. [51 U. S.] 558. It was a fault of the lookout in not calling out the position and course of the schooner. The evidence is she would have been avoided by the steamer had not the latter starboarded her helm. The steamer was also in fault in keeping up a speed of

---

9½ to 10 knots, if the night was so thick and dark that she could not make out a vessel ahead in time to keep clear of her, although she had competent lookout stationed. The Rose, 2 W. Rob. Adm. 1; The Virgil, 2 W. Rob. Adm. 201: [Newton v. Stebbins] 10 How. [51 U. S.] 606. It is incumbent on steamers running in thick weather to hold themselves under such management that they can steer from or back out of the way of any vessel within the distance such vessel may at the time be discoverable from her by the use of reasonable diligence.

Upon the facts in proof the collision must be attributed to the omissions and mistakes of those in charge of the steamer, and in no way to any fault on the part of the schooner. A decree must be entered that the libellants recover their damages, and that the steamer be condemned therefor, and that a reference be had to a commissioner to compute and ascertain the damages. On the reference evidence can be given whether the loss of the vessel might have been avoided by proper efforts on the part of her crew, &c. Decree accordingly.

[The claimant subsequently appealed to the circuit court, where the decree of this court was affirmed. Case No. 7,188.]